Argued and submitted January 31, 2001, reversed in part; otherwise affirmed January 23, 2002

STATE OF OREGON,
*Respondent,*

*v.*

DELBERT BALDWIN NEWMAN,
*Appellant.*

98CR0803MA; A104773

39 P3d 874

Robin A. Jones, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Brendan C. Dunn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

DEITS, C. J.

---

* Deits, C. J., *vice* Ceniceros, S. J.

## DEITS, C. J.

Defendant appeals from a judgment of conviction for one count of felony driving while suspended or revoked.[1] ORS 811.175 (1997); ORS 811.182 (1997). We write only to address defendant's assignment of error that the trial court erred in denying his motion for judgment of acquittal.[2] We reverse.

■   The indictment charged, in pertinent part, that defendant "on or about the 15th day of June 1998, in Deschutes County, Oregon, did unlawfully and feloniously drive a motor vehicle upon premises open to the public * * * during a period when the defendant's driving privileges were suspended by the DEPARTMENT OF MOTOR VEHICLES[.]"[3] However, at trial, the state produced evidence that a district court had suspended defendant's driving privileges. Specifically, the state produced a copy of a DMV form entitled "**NOTICE OF SUSPENSION OR REVOCATION**." (Boldface in original.) The form states that it "is to serve as a suspension/revocation notice to the defendant" and that the District Court of Deschutes County had imposed a suspension against defendant's driving privileges from November 24, 1997 to November 23, 1998. The form also states that it is the only notice that defendant will receive and that the "**action imposed by the court will be entered on [defendant's] record by Driver and Motor Vehicle Services**." (Boldface in original.) Defendant's signature is on the form, and he testified that he received a copy of it.

---

[1] The judgment from which defendant appeals also acquitted him of one count of driving under the influence of intoxicants.

[2] Defendant also assigns as errors the trial court's allowance of the state's motion to amend the indictment by deleting the phrase "by the Department of Motor Vehicles," the trial court's denial of his demurrer to the amended indictment on the ground that it failed to state a crime, and the trial court's jury instructions. The state correctly points out, however, that the state did not move to amend the indictment, nor did defendant demur to the indictment. Accordingly, we do not discuss those assignments of error further. Additionally, in light of our disposition of defendant's assignment of error concerning the judgment of acquittal, we need not address his assignment of error concerning the trial court's jury instructions.

[3] We take judicial notice that the "Department of Motor Vehicles" (DMV) is the Driver and Motor Vehicle Services Branch of the Oregon Department of Transportation. *See* OAR 735-010-0008(11) (" 'DMV' means the Oregon Department of Transportation, Driver and Motor Vehicle Services Division.").

At trial, defendant cited *State v. Long*, 320 Or 361, 885 P2d 696 (1994), *cert den* 514 US 1087 (1995), and *State v. Russell*, 231 Or 317, 372 P2d 770 (1962). He argued that the variance between the allegation that he was suspended by DMV and the proof that he was suspended by a court was material and that he had a right under Article VII (Amended), section 5(3), of the Oregon Constitution, "to be tried only for the specific criminal act as to which the grand jury handed down the indictment."[4] Defendant concluded that "[w]e're here defending this case because we believe that the * * * district attorney could not prove in court the allegations that it made." The state countered that, under ORS 811.175 (1997),

> "you can plead in the alternative by the court or by the Department of Transportation, it can be either one, but it is not a material element to the crime. The defendant has to be put on notice of the elements that constitute the criminal act. Who suspends does not constitute an element of the criminal act. What constitutes an element of [the] criminal act is after notice, that the defendant drives.

> "For those reasons, we do not feel that it is a material element and that the variance does not rise to the level upon which * * * the defendant cannot be prosecuted in this proceeding. He has received notice from the discovery which has been provided to him in a timely matter prior to trial. The allegation is clearly that the defendant drove after being notified that he was prohibited from doing so."

The trial court reasoned:

> "The standard that I'm finding is the one [defense counsel] referenced about whether or not language can be stricken from the indictment without that indictment then becoming vulnerable to a demur[rer] for failure to state an

---

[4] Article VII (Amended), section 5, of the Oregon Constitution, provides, in part:

"(3) * * * a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury.

"* * * * *

"(6) * * * The district attorney may file an amended indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form."

element of [the] crime. I'm finding that[,] even if that portion was stricken from the indictment as to which agency, whether court or an administrative agency issued the suspension, I don't find that to be a material element of the crime. I think if that was deleted, that would not subject the indictment * * * to a successful demur[rer].

"I come to that conclusion based on a reading of the statute itself of the crime, [ORS] 811.182 [(1997)], and the fact that it's set forth in the alternative. Also, and taking into account the fact that this [is] a DMV form that was used, even though it indicates action imposed by the court, it also indicates this is the only notice of suspension or revocation that you will receive.

"* * * * *

"[Defense counsel], you may assume that you've properly raised this issue for purposes of a directed verdict at the close of the State's case, and at [the] close of the defense's case, if you wish to make reference to it at that time, you certainly can, but I think we've adequately covered it."

On appeal, the parties frame the issue as whether, under the analysis in *State v. Wimber*, 315 Or 103, 843 P2d 424 (1992), the trial court impermissibly amended the substance of the indictment in violation of Article VII (Amended), section 5, of the Oregon Constitution. However, as noted above, there was no formal request to amend the indictment in this case. Thus, we understand the dispositive legal issue on appeal to be whether there was a material variance between the allegations in the indictment and the proof at trial. The Supreme Court's opinion in *Long* illustrates the appropriate method for analyzing that legal issue. As in this case, the parties in *Long* framed the issue as one involving the propriety of an amendment to an indictment even though no amendment had been requested.

In *Long*, the grand jury indicted the defendant for sodomy, and the indictment alleged that the crime occurred during a particular period of time. Thereafter, the state notified defense counsel that the dates in the indictment were incorrect due to a typographical error and that, at trial, it would prove the proper date, which was outside the time

period alleged in the indictment. The "[d]efendant acknowl-edge[d] that he knew before trial that the state intended to present evidence at trial that the crime was committed on April 22, 1984." *Long*, 320 Or at 364. Additionally, the record indicated that "the district attorney never formally moved to amend the indictment." *Id.* At trial, the defendant moved for a judgment of acquittal on the ground that the state had presented no evidence that the crime had been committed during the time period alleged in the indictment. The defendant also relied on Article VII (Amended), section 5(3), of the Oregon Constitution. The trial court denied the defendant's motion because time was not a material element of the crime of sodomy in that case and the defendant had suffered no actual prejudice as a result of the variance. The defendant was convicted, and he appealed.

On appeal, the defendant argued that

"the trial court erred by 'allowing the state to amend at trial a material allegation of the indictment' and by 'offering an instruction that amounted to an amendment to a material element of the indictment.' He argued that 'the amendment effected by the instruction was unconstitutional under Article VII (Amended), section 5(3), [of the Oregon Constitution,] because it was an amendment of the substance of the indictment and not an amendment as to form.'" *Long*, 320 Or at 366.

According to the Supreme Court in *Long*, we relied on *Wimber* and held that the amendment concerned a defect in form and did not alter the substance of the grand jury's decision. *Long*, 320 Or at 367.

On review to the Supreme Court, the defendant in *Long* argued that we improperly applied *Wimber*. The Supreme Court explained the gravamen of *Wimber*'s four-part test:

"[T]his court recognized that, under Article VII (Amended), section 5, of the Oregon Constitution, a trial court may amend a defect in form, but may not amend a defect in substance. Matters of form are matters that are not essential to the charge and are merely clerical matters, such as matters as to which the defendant cannot be misled to his or her prejudice by the amendment. *A matter that is essential to*

*show that an offense has been committed is a matter of sub-stance." Long*, 320 Or at 367 n 9 (emphasis added; citations omitted).

The court then reasoned that, although the "defendant mount[ed] his argument in constitutional terms" and we had "responded in kind[,] * * * most of the answer to defendant's argument in this case lies outside the state and federal con-stitutions." *Id.* at 367. Relying on *State v. Howard*, 214 Or 611, 331 P2d 1116 (1958), the court explained the appropri-ate method of analysis for determining whether a variance between an allegation and the proof at trial is material.[5] First, a court examines whether the variance between an allegation and proof concerns an allegation of a material ele-ment of the crime. *Long*, 320 Or at 368, 369.[6] Second, if the allegation does not concern a material element of the crime, the court determines whether "on the facts of the particular case, the defendant had suffered prejudice to his defense by" the variance between the allegation and the proof. *Id.*[7]

---

[5] Significantly, in *Long*, the Supreme Court did not apply the four-part test that it articulated in *Wimber* for determining whether an amendment to an indict-ment is substantive. We note that *Long* was procedurally different from *Wimber* because the indictment in *Long* was not amended. Instead, in *Long,* there was a variance between the allegations in the indictment and the proof at trial. In responding to the defendant's argument that he was not tried on the charge as to which the grand jury handed down the indictment, the court in *Long* noted:

"In future cases, the better practice would be for the state to advise the court before trial that, due to a perceived error in form in the indictment, the state believes that it should be amended. The court could then hear the parties' arguments on the issue and thereafter make a finding, which is what the con-stitutional provision[, Or Const, Art VII (Amended), § 5] actually contem-plates, as to what had occurred, in order to alleviate any doubt. If the error is of substance, the state may seek permission to resubmit the matter to the grand jury. If the error is of form only, the court may amend the indictment by inter-lineation." 320 Or at 370 n 14 (citation omitted).

[6] *See Russell*, 231 Or at 319 ("Whether or not the allegation of a heifer in the indictment before us is material depends upon whether the word can be stricken from the indictment without rendering the pleading vulnerable to demurrer on the ground that it no longer states a crime.").

[7] *See State v. Cook*, 154 Or 62, 66-67, 59 P2d 249 (1936) ("A variance as to a matter which is not material is not fatal. Under the modern practice, a variance is not material unless it misleads the accused in making his defense or may expose him to the danger of again being put in jeopardy for the same offense. The purpose of the rule as to a variance is to avoid surprise[.] * * * 'Variance between allegation and proof which does not go to the extent of showing that the offense proved is not the offense charged is immaterial.' ") (quoting *Ware v. State*, 12 Ala App 101, 111, 67 So 763 (1914)).

Thus, in *Long*, the Supreme Court held that the "defendant's motion for judgment of acquittal was without merit, and the trial court correctly denied it." 320 Or at 369. The court reasoned that time was not a material element of the crime of sodomy in that case because, "as the state correctly argue[d] * * *, the indictment would have been sufficient had it alleged only the elements of the offense, the age of the victim, and that defendant had committed the act within three years of the filing of the indictment—*i.e.*, within the period provided by the applicable statute of limitation." *Id.* The court also reasoned that the defendant was not prejudiced by the variance between the allegation and proof.[8]

The Supreme Court then noted that "[t]he only remaining element of defendant's argument that is not answered by the foregoing discussion is the assertion that he was not, in fact, tried on the case as to which the grand jury handed down the indictment against him." *Id.* at 370. The court indicated that there was uncontradicted evidence presented in the trial court that "the actual date testified to by the witnesses before the grand jury was the same as the date proved at trial." *Id.* The court also noted:

"On the record, * * * the question whether the trial court 'amended' the indictment is academic; the indictment was sufficient to charge the crime in question, and the state's proof fit material elements of the crime charged. In any case, the 'amendment' did not change the substantive

---

[8] Our case law illustrates the same analytical approach. *See State v. Delaney*, 160 Or App 559, 567, 984 P2d 282, *rev den* 329 Or 358 (1999) (upholding the trial court's denial of the defendant's motion for judgment of acquittal because the challenged language could be stricken from the indictment without rendering it subject to demurrer for failure to state a crime, the defendant had demonstrated no prejudice from the variance between the allegations and proof, and the " 'amendment' of the indictment did not impermissibly circumvent or supercede the constitutional function of the grand jury by subjecting defendant to trial and conviction based on facts materially different from those presented to the grand jury"); *State v. Baldeagle*, 154 Or App 234, 239-40, 961 P2d 264, *rev den* 327 Or 621 (1998) (reasoning that, "[i]f the date of a crime is not a material element of the offense, variance between the date alleged and the date proven is not a fatal flaw, unless the date proven is outside the statute of limitations, or the defendant is prejudiced by the variance"); *State v. Wells*, 147 Or App 125, 133-34, 935 P2d 447 (1997) (holding that, "[b]ecause the indictment stated a crime without the erroneous information *and* defendant was not misled or prejudiced in any manner as to where the alleged trespass occurred, the trial court did not err in denying his motion for a judgment of acquittal on the charge of trespass") (emphasis in original).

decision of the grand jury, but instead effected a permissible alteration in form, authorized under Article VII (Amended), section 5(6), of the Oregon Constitution, and the state was not required to resubmit the case to the grand jury. *See State v. Wimber, supra.*" *Long,* 320 Or at 371.

Under the analysis in *Long,* we begin by determining whether the indictment states a crime without the disputed allegation, "by the [DMV]," or, in other words, whether that allegation is a material element of the crime. ORS 811.182 (1997) provided, in part:

"(1) A person commits the offense of criminal driving while suspended or revoked if the person violates ORS 811.175 and the suspension or revocation is one described in this section * * *."

ORS 811.175 (1997) provided, in part:

"(1)   A person commits the offense of infraction driving while suspended or revoked if the person does any of the following:

"(a)   Drives a motor vehicle upon a highway during a period when the person's driving privileges or right to apply for driving privileges have been suspended or revoked *in this state* by a court or by the Department of Transportation." (Emphasis added.)

By its terms, ORS 811.175(1)(a) (1997) required that a defendant's driving privileges had been suspended or revoked "in this state."

That straightforward reading of the text is borne out by its context, which shows that the legislature understands the difference between a suspension or revocation "in this state" as opposed to other jurisdictions. ORS 807.020, for example, provides, in part:

"A person who is granted a driving privilege by this section may exercise the driving privilege described without violation of the requirements under ORS 807.010. * * * The following persons are granted the described driving privileges:

"(1)   A person who is not a resident of this state may operate a motor vehicle without an Oregon license or driver permit if the person holds a current out-of-state license

issued to the person by the person's home jurisdiction. To qualify under this subsection, the person must have the out-of-state license or driver permit in the person's possession. A person is not granted driving privileges under this subsection:

"* * * * *

"(b) During a period of suspension or revocation by this state or any other jurisdiction of driving privileges or of the right to apply for a license or driver permit issued by this state or any other jurisdiction[.]"

ORS 811.175 (1997), in contrast, did not refer to suspension by this state or any other jurisdiction; rather, it referred solely to suspension or revocation "in this state."

Based on our reading of the statute, the state must allege and prove that a defendant's driving privileges were suspended *in this state* as required by ORS 811.175 (1997). Here, the indictment alleges that defendant's driving privileges were suspended by the DMV, a branch of the Oregon Department of Transportation. Based on the specific language of this indictment, the allegation "by the [DMV]" serves to allege that the defendant's privileges were suspended *in this state. See* 179 Or App at 3 n 2. Thus, while the specific entity that suspends a defendant's privileges may not be a material element of this crime, the fact that a defendant's privileges were suspended *in this state* is.[9] Because, in

---

[9] The state urges us to overrule *State v. Martinez*, 73 Or App 302, 698 P2d 510 (1985). In that case, the indictment alleged that the defendant feloniously drove a motor vehicle while his license was revoked by DMV. At trial, the state "moved to amend the indictment by deleting the allegation 'by the Motor Vehicles Division.' " *Id.* at 304. The trial court granted the motion. The defendant was convicted based on evidence that a circuit court had revoked his driving privileges. On appeal, the defendant argued that "[t]he change in the indictment was one of substance and, under the Oregon Constitution, such an amendment of an accusatory instrument is prohibited without a fresh determination of probable cause by the grand jury[.]" *Id.* The state conceded that the trial court erred under the circumstances of that case.

*Martinez* does not state the specific underlying facts of the case, such as whether there was more than one revocation. While the state conceded error in *Martinez*, it indicated that the allegation of the entity that revoked the defendant's privileges could be surplusage under different circumstances. We indicated that "[w]hether or not that would be true in another case, it does not apply in this case." *Id.* at 304 n 1. Thus, in light of the state's concession in *Martinez* and the fact that, since *Martinez* was decided, the Supreme Court in *Wimber* articulated the test for determining whether an amendment to an indictment is formalistic or substantive, *Martinez* should be limited to its own facts.

this case, the state did not allege that defendant's driving privileges were suspended in this state, its allegation of the entity of suspension operates as an allegation that defendant's privileges were suspended in this state. Consequently, under *Long*, the variance between the allegation and proof in this case concerns a material element of the crime.[10] Thus, the variance was material, and the trial court erred in denying defendant's motion for judgment of acquittal. In light of our disposition, we need not address the parties' other arguments.

Conviction for felony driving while suspended reversed; otherwise affirmed.

---

[10] We note that, in *State v. Hunter*, 141 Or App 73, 918 P2d 104, *rev den* 324 Or 78 (1996), the defendant argued that the trial court erred in denying her motion for judgment of acquittal as to two counts of animal neglect in the second degree because the variance between the allegation that the cats were adults and the proof that they were kittens was material. We applied the test articulated in *Russell* and determined that the age of the cats was not a material allegation. However, we reasoned that, even if it had been a material allegation,

"any discrepancy between the evidence and complaint is not material. When defendant claims a variance between the proof and the allegations in the charging instrument, the test is whether the charging instrument misled the defendant and prejudiced her in the preparation of her defense." 141 Or App at 82.

In *Hunter*, our statement that we would consider whether a variance to a material allegation prejudiced the defendant was *dictum*, and that statement would appear to be inconsistent with the Supreme Court's analysis in *Long*.